RECEIVED
IN LAKE CHARLES, LA.

OCT 11 2012

TONY R. MOORE, CLERK
BY_____
        DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

CARMEN MALBROUGH, ET AL.        :        DOCKET NO. 2:11 CV 1842

VS.                             :        JUDGE MINALDI

KANAWHA INSURANCE CO., ET AL. :        MAGISTRATE JUDGE KAY


## MEMORANDUM RULING

Before the court is a Motion for Judgment on the Pleadings [Doc. 10], filed by the

defendant Gilchrist Construction Co., L.L.C. ("Gilchrist").  The motion is opposed by the

plaintiffs, Carmen Malbrough and Lionel Simon [Doc. 16], and by Gilchrist's co-defendant,

Kanawha Insurance Company ("Kanawha") [Doc. 12].   Gilchrist subsequently filed a Reply to

Kanawha's  Response [Doc. 15].  Before the Court ruled on Gilchrist's Motion for Judgment on

the Pleadings, the plaintiffs were granted leave to file an Amended Complaint. [Doc. 19].  For

the reasons stated herein, Gilchrist's Motion for Judgment on the Pleadings will be GRANTED

in part and DENIED in part, and the plaintiffs will be given leave to amend their Complaint.

### FACTS

This lawsuit arises out of the denial of life and accidental death insurance benefits

allegedly due to the plaintiffs as beneficiaries of a group term insurance policy (the "Policy")

issued to Gilchrist by Kanawha Insurance Company.[1]  Gilchrist purchased the Policy from

_____

[1] Am. Compl. ¶ 13.

1

Kanawha on January 1, 2009 for its employees, and the plaintiffs allege that Gilchrist elected to administer the plan itself rather than hire a third-party administrator.[2]

In connection with its duties as plan administrator, Gilchrist allegedly set up a website through which employees could purchase coverage.[3] The Policy specified that employees could purchase life and accidental death insurance in an amount up to five times their basic annual earnings.[4] The plaintiffs allege that Mr. Simon's annual salary was approximately $30,000, and consequently, he was only eligible to elect up to five times his salary, or approximately $150,000 of life insurance and $150,000 of accidental death insurance coverage (or, $300,000 worth of coverage total).[5] Nevertheless, the plaintiffs aver an error in Gilchrist's website permitted Mr. Simon to purport to elect $350,000 of life insurance and $350,000 of accidental death insurance ($700,000 total).[6] Gilchrist deducted the premiums for that amount of insurance from his paycheck from the day he purchased coverage until his death, which occurred roughly a year later.[7]

Mr. Simon died on December 21, 2010 from injuries he sustained in a work-related accident on December 9, 2010.[8] After Mr. Simon's death, the plaintiffs filed claims as the

---

[2] *Id.* at ¶ 8.

[3] *Id.*

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶ 10.

[6] *Id.*

[7] *Id.* at ¶ 11.

[8] *Id.* at ¶ 14.

named beneficiaries under his life and accidental death insurance policies.[9]  Kanawha allegedly paid each of the plaintiffs $135,000 in benefits in February of 2011, for a total of $270,000 (essentially, $30,000 shy of the full $300,000 figure Mr. Simon would be able to recover if Gilchrist had correctly quoted his policy limits on the website as $150,000 for life insurance and $150,000 for accidental death insurance).[10]  However, Kanawha refused to pay the full  $700,000 of coverage which Mr. Simon had attempted to elect for accidental death insurance and life insurance, because that amount exceeded the  maximum coverage available to him under the Policy.[11]

On September 15, 2011, the plaintiffs filed this lawsuit against Gilchrist and Kanawha in the 31st Judicial District Court for Jefferson Davis Parish, Louisiana to recoup the difference between what they were paid and what they would have been paid under the $700,000 policy allegedly promised to them by Gilchrist or, $430,000 total (plus attorney's fees, legal interest, and any other legal remedies available).[12]  The plaintiffs alleged that they were entitled to relief based on the doctrines of detrimental reliance and contract ratification.[13]  The defendants removed  the case to this court on the basis of federal question jurisdiction because the case arises under  Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001,

---

[9] *Id.* at ¶ 12.

[10] *Id.* at ¶¶ 17-18.

[11] *Id.* at ¶ 15.

[12] Gilchrist's Mot. for J. on the Pleadings [Doc. 10], pg. 1.

[13] Am. Compl. at ¶¶ 21-22.

*et seq.*[14]

Gilchrist now moves for judgment on the pleadings dismissing the plaintiffs' claims against it.[15]  Its argument is twofold.  First, it argues that it is not a proper defendant under ERISA because Kanawha, and not Gilchrist, is the only party that owes benefits to the plaintiff-beneficiaries, and that Kanawha, not Gilchrist, is the only party involved in the insurance policy with the plaintiff-beneficiaries.[16]  Thus, Kanawha should "hold the bag" and be solely liable for any ERISA benefit claims the plaintiff-beneficiaries have against the policy.

Second, Gilchrist alleges that even if it were a proper defendant, the plaintiffs are not permitted to recover any additional money from the policy, because ERISA preempts the plaintiffs' state law claims for contract ratification and detrimental reliance.[17]  Gilchrist argues that the plaintiffs' only other avenue of relief (a breach of fiduciary duty claim under ERISA § 409) is likewise not available to the plaintiffs based on the facts alleged.[18]  This is so, Gilchrist reasons, because the plaintiffs cannot bring both an equitable breach of fiduciary duty claim and a claim for benefits, as the two claims are duplicative of each other.[19]  Finally, it argues that the plaintiffs' claims for the additional money above and beyond the original $150,000/$150,000 plan are not claims for equitable relief for breach of fiduciary duty allowed under ERISA, but

---

[14]Not. of Removal [Doc. 1].

[15][Doc. 10].

[16]*Id.* at pg. 4-5.

[17]*Id.* at pg. 5.

[18]*Id.*

[19]*Id.* at pg. 6-7.

4

rather are non-equitable, legal claims for monetary damages disallowed under ERISA.[20]

As an additional note, Kanawha filed a Response to Gilchrist's Motion for Judgment on the Pleadings, essentially arguing that Gilchrist is the only party the plaintiffs should be able to seek redress from,[21] and agreeing with Gilchrist that the plaintiffs do not have any viable state law claims against either party.[22]  Presumably because Kanawha's Response advocates for Gilchrist's continued involvement in this case, Gilchrist filed a Reply to Kanawha's Response to Motion for Judgment on the Pleadings, arguing Kanawha's Reply should not be considered in the instant 12(c) Motion because: (1) Kanawha is not an adverse party to Gilchrist,[23] and, (2) Kanawha attached exhibits to its Response, which would unfairly turn Gilchrist's 12(c) Motion into a Motion for Summary Judgment if the exhibits were considered by the Court.[24]  Because the Court can decide the instant Motion based on Gilchrist's and the plaintiffs' memoranda and the facts alleged in the plaintiffs' amended complaint, the Court need not refer to Kanawha's Response or attached exhibits, and thus Gilchrist's arguments against its consideration are premature and unwarranted.

## RULE 12(c) STANDARD

After a party has answered a complaint, the proper mechanism for removing a claim from the Court's consideration is a judgment on the pleadings under Federal Rule of Civil Procedure

---

[20]*Id.* at pg. 8-10

[21]Kanawha's Res. to Gilchrist's Mot. for J. on the Pleadings, [Doc. 12], pg. 2-5.

[22]*Id.,* pg. 5-7.

[23]Gilchrist's Reply Mem. In Supp. of Mot. for J. on the Pleadings and in Opp. To Kanawha Insurance Company's Res., [Doc. 15]. pg. 4.

[24]*Id.,* pg. 5-6.

12(c).  The court evaluates motions for judgment on the pleadings in the same manner in which it evaluates Rule 12(b)(6) motions to dismiss.  In ruling on a Rule 12(b)(6) or Rule 12(c) motion, the court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp.2d 383, 388 (E.D. La. 2006).  The plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.  A court should only grant a motion for judgment on the pleadings when the the plaintiff would not be entitled to relief under any set of facts the plaintiff could prove consistent  with the complaint. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

## LAW AND ANALYSIS

### I.     The Plaintiffs' State Law Claims Are Completely Preempted

District Courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A claim arises under federal law if it satisfies the "well-pleaded complaint" rule, which requires that a federal question must appear on the face of the complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 10-11 (1983).  Here, the plaintiffs have alleged state law causes of action, under detrimental reliance and contract ratification, and thus no federal claim appears on the face of the complaint.[25]  There is an exception, however, to the well-pleaded complaint rule: "when a federal statute wholly displaces the state-law cause of action." *Aetna Health Inc. v. Davila* 542

---

[25]*See* Pl.'s Am. Compl. at ¶¶ 21-22.

6

U.S. 200, 207 (2005). ERISA is such a statute. *Id.*

There are two forms of ERISA preemption. First, in complete preemption, "any state cause of action that seeks the same relief as a cause of action authorized by ERISA § 502(a), 'regardless of how artfully pleaded as a state action,' is completely preempted." *Gulf Coast Plastic Surgery v. Standard Ins. Co.,* 562 F.Supp. 2d 760, 765 (5th Cir. 2008) (citing *Giles v. NYLCare Health Plans, Inc.*. 172 F.3d at 337)). Thus, state claims are completely preempted if they fall within the scope of § 502(a), which authorizes participants or beneficiaries to file civil actions to recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to future benefits, and enjoin violations of ERISA. 29 U.S.C. § 1132(a); *McGowin v. ManPower Int'l, Inc.* 363 F.3d 556, 559 (5th Cir. 2004) (holding that "complete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a)."). If complete preemption exists, therefore, the state claims are subject to removal under federal question jurisdiction, and ERISA offers the sole framework for relief. *See id.*

The second form of ERISA preemption, known as "conflict" preemption, exists when a state law claim falls outside of the scope of § 502's civil enforcement provision, but still "relates to" the plan under § 514. 29 U.S.C. § 1144(a) (ERISA provisions ". . . shall supersede any and all state laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan. . ."); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). The presence of conflict preemption does not establish federal question jurisdiction like complete preemption under § 502 (in which a state cause of action is transformed into a federal one), but rather serves as a defense to a state action. *Giles*, 172 F.3d at 337. When the doctrine of complete preemption does not

7

apply, but the plaintiff's claim is still arguably preempted under § 514(a), the district court, being

without removal jurisdiction, must remand to the state court where the preemption issue can be

addressed and resolved. *Id.* The undersigned notes, however, that the Fifth Circuit has held that

"[t]he set of claims described in § 502(a) [and complete preemption] will rarely, if ever, differ

from the set of claims that 'relate to' an ERISA plan under § 514(a)." *Gulf Coast*, 562 F.Supp.

2d 760, 767 (E.D. La. 2008) (quoting *Woods v. Texas Aggregates, LLC*, 459 F.3d 600, 603 (5th

Cir. 2006)).

      The defendants both appear to allege that complete preemption under § 502 applies in this

case, as they offer that ERISA is the only framework for relief.[26]   The Fifth Circuit has never set

out a definitive test for when complete preemption under § 502(a) applies, but has set forth a test

for when state laws "relate to" the plan under § 514(a), assessing: (1) whether the claim

addresses an area of exclusive federal concern (such as the right to receive benefits under an

ERISA plan) and (2) whether the claim directly affects the relationship among traditional

entities: the plan and its fiduciaries, the employer, beneficiaries, and participants. *Hubbard v.*

*Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 945 (5th Cir. 1994) (citations omitted).

      Thus, the task before the undersigned is to determine whether the plaintiff's claims are

necessarily so tied to the administration of the plan and disbursement of benefits that ERISA

must govern. Central to this inquiry for the Fifth Circuit is whether the claims involve conduct by

ERISA entities and whether the claims affect the relations among the principal ERISA entities.

*Perkins v. Time Ins. Co*, 898 F.2d 470, 472 (5th Cir. 1990) (holding that the plaintiff's claims

only indirectly related to ERISA because his suit was against an independent insurance agent,

---

[26]*See generally* [Doc. 10-1], [Doc. 12], [Doc. 15].

and thus did not "affect the relations among the principal ERISA entities"); *Hobson v. Robinson*, 75 Fed. App'x 949, 956 (5th Cir. 2003) (holding that the plaintiff's state common law claims for fraud and negligent misrepresentation against an independent insurance agent were not preempted by ERISA because their relationship was "derived from state-common law claims, not the ERISA plan"). Related to this, the Fifth Circuit also has found important whether the state law claims are "bound up with interpretation and administration of the ERISA plan." *Hubbard*, 42 F.3d at 947

In regard to claims of detrimental reliance, "the Fifth Circuit has held that ERISA does not [necessarily] preempt state law claims for detrimental reliance. . ." *Percle v. Performance Energy Servs., LLC,* No. 10-2777, 2011 WL 337891, \*3-\*4 (citations omitted). The inquiry into whether detrimental reliance claims are preempted by ERISA turns on "whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with the ERISA plan that it cannot be separated. . . .[T]he extent the claim itself relates to an ERISA plan guides [a court's] determination." *Hobson*, 75 Fed. App'x. at 954 (5th Cir. 2003). A plaintiff must assert that the relationship between the parties involved imposes a duty under ERISA, and that the defendant breached that duty by making misrepresentations upon which the plaintiff detrimentally relied. *See id.*

In cases where Fifth Circuit courts have *not* found ERISA preemption for detrimental reliance claims, typically the courts have found that ERISA preemption does not apply because the misleading activity on the part of the defendant did not relate to interpretation or administration of the plan. *See E.I. DuPont de Nemours & Co. v. Sawyer,* 517 F.3d 785, 800 (5th Cir. 2008) (finding that fraudulent inducement claim did not relate to ERISA because the claim

9

did not require plaintiffs to prove employer's administration of plan was improper); *see also Smith v. Texas Children's Hospital*, 84 F.3d 152, 155 (5th Cir. 1996) (finding that defendants' misleading statements about whether plaintiff would retain benefits did not relate to quantum of benefits under plan, and thus ERISA did not preempt the claim); *Percle*, 2011 WL 337891 at *5 (same).

The plaintiffs base their claims for detrimental reliance and contract ratification on the allegedly misleading information provided to Mr. Simon on the Gilchrist-administered website.[27] They allege that Gilchrist was the plan administrator, and that in its administrative capacity, it set up an online system where employees could purchase coverage and select desired policy limits, negligently setting the policy limits too high for Mr. Simon in the process.[28] Subsequently, they allege that Gilchrist "ratified" the contract between itself and Mr. Simon by letting Mr. Simon pay premiums on a $350,000/$350,000 policy for a full year, and then did not make good on their contract later when the benefits vested and Kanawha only gave the beneficiaries $270,000 total.[29]

Viewing the facts in the plaintiffs' complaint in the light most favorable to the plaintiffs, it appears that the alleged negligent misrepresentations and subsequent "ratification" happened when Gilchrist was acting in its administrative capacity as an ERISA plan administrator, and thus ERISA necessarily governs and preempts their state law claims. It cannot be said that the ERISA plan only "indirectly" relates to their claims in this instance. The plaintiffs are claiming that additional money is due to them under the plan, and in order to assess the viability of their

---

[27]Amended Compl. at ¶ 8.

[28]*Id.*

[29]Amended Compl. at ¶ 21.

claims, this court could would of course be required to interpret the ERISA plan itself to see how much money is actually due, and assess whether Gilchrist improperly administered the plan when it mislead Mr. Simon into thinking he had higher policy limits.  Therefore, this Court finds the plaintiffs' contract ratification and detrimental reliance claims completely preempted, and thus must examine all claims in the framework of ERISA remedies.

## II.    ERISA § 502

While plaintiffs, in their amended complaint, couch their claims in theories of detrimental reliance and contract ratification, in contrast, in their Response to Gilchrist's 12(c) motion, the plaintiffs make all of their arguments exclusively under ERISA.[30]  They allege that under ERISA, Gilchrist is a proper defendant, and that ERISA allows them the full recovery of benefits under the $350,000/$350,000 plan.[31]  Gilchrist argues, on the contrary, that if the plaintiffs' claims are recast as ERISA claims, the plaintiffs will have no viable avenue of relief against them.[32]  As the plaintiffs do not specifically allege which provision of ERISA's enforcement section they are seeking recovery under in their complaint, this court will examine all potential channels of relief the plaintiff-beneficiaries could pursue, in order to discern whether the plaintiffs have, on the face of their pleadings, alleged an actionable claim against Gilchrist.

Under ERISA's Civil Enforcement section, § 502(a),  a plan beneficiary has three different options for recovery under ERISA: he or she can bring an action (1) "to recover benefits due to him under the terms of his plan" under § 502(a)(1)(B);  (2) to make claims for

---

[30]*See* Pl.'s Opp. to Gilchrist's Mot. for J. on the Pleadings [Doc. 16], pg. 5-11.

[31]*Id.*

[32]*See* [Doc. 10], pg. 5-10.

appropriate relief under § 502(a)(2), which deals with breaches of fiduciary duties listed under § 409; or, (3) to "obtain other appropriate equitable relief" under § 502(a)(3) if a pure claim for benefits under § 502(a)(1)(B) will not redress his injury. 29 U.S.C. § 1132(a)(1)(B), (a)(2), (a)(3).

### A.    The Plaintiffs Admit Gilchrist Does Not Have Ultimate Control Over Benefit Determinations, and Therefore Gilchrist is Not a Proper Defendant Under § 502(a)(1)(B)

The first channel of relief, § 502(a)(1)(B), allows a the plaintiff-beneficiary to enforce personal rights under the plan by recovering benefits due, obtaining declaratory judgment to entitlement to benefits under the plan document, or enjoining the administrator from improperly refusing to pay benefits. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147 (1985). Section 502(a)(1)(B) is the narrowest of beneficiaries' three channels of relief, and typically a money judgment against an employee benefit plan under § 502(a)(1)(B) "shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2).

While there is a circuit split on whether the ERISA plan itself is the only proper defendant in an ERISA action against the plan under § 502(a)(1)(B), the Fifth Circuit has joined other circuits in holding that an employee can not only recover from the insurance plan itself, but also his or her employer. *Muscemi v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349 (5th Cir. 2003) (citations omitted). Recovery against an employer is limited, however, to situations where the employer is the plan administrator or plan sponsor of the insurance policy *and* exerts control over benefit determinations and payouts. *Id.* District Courts in the Fifth

Circuit have followed *Muscemi*'s lead, finding that "[t]he significant factor in the *Muscemi* case was that the employer had the ultimate decisionmaking authority as to whether the plaintiff was entitled to benefits under the plan." *Kinnison v. Humana Health Plan of Texas, Inc.*, C-07-381, 2008 WL 2446054 *10 (S.D. Tex., June 17, 2008); *see also North Cypress Medical Center Operating Co. V. CIGNA Healthcare*, 782 F.Supp. 2d 294, 306 (S.D. Tex. 2011); *Caroll v. United of Omaha Life Ins. Co.,* 378 F.Supp. 2d 741, 747 (E.D. La. 2005).

Gilchrist argues that the plaintiffs should not have added it as a defendant in this action, because it was never a party to the insurance contract, never owed the beneficiaries money under the policy, and acted as nothing more than a "middleman" between Kanawha and Mr. Simon.[33] In summary, it argues that it is a non-essential party who had no say over what transpired between Kanawha and the plaintiffs.[34]  The plaintiffs contest that Gilchrist played a central role in the cause of action, as it was the plan administrator, fiduciary, and sponsor, and was in charge of disseminating information on the insurance policy and setting up a subscription website for the policy online.[35]  They allege that Mr. Simon specifically relied on the information which Gilchrist negligently and incorrectly put on its website, and that Mr. Simon had no idea that the original policy between Gilchrist and Kanawha would have only allowed him $150,000/$150,000 in coverage.[36]  Under their reasoning, because of the control Gilchrist exerted over the plan, the plaintiffs allege that of course Gilchrist should be responsible for disbursing the additional

---

[33]*Id.* at pg. 4-5.

[34]*See id.*

[35]Am. Compl. at ¶ 8.

[36][Doc. 16], pg. 7-8.

13

money owed under the $350,000/$350,000 plan Mr. Simon was promised.[37]  As the plaintiffs

present their claims in their pleadings, therefore, it appears that the plaintiffs could be seeking

nothing more than a disbursement of benefits under the plan, i.e., a straightforward §

502(a)(1)(B) claim for the money that is allegedly personally due to them.

Despite these claims, as the plaintiff-beneficiaries' complaint is written, they do not have

an actionable claim under § 502(a)(1)(B) for monetary damages against Gilchrist under the plan.

The plaintiffs admit in their amended complaint that, at all times, Kanawha, not Gilchrist,

"retained the right to decide when to pay benefits according to the policy at issue," and "refused

to pay the rest, based on the policy limitations.'[38]   According to *Muscemi* and other Fifth Circuit

case law, a the plaintiff *must* allege not only that an employer was a plan administrator or

sponsor, but also that an employer had the authority to deny benefits to the beneficiaries, in order

to fall under the ambit of § 502(a)(1)(B). *Muscemi*, 332 F.3d at 349.  Assuming that all of the

plaintiffs' fact allegations in its pleadings are true, therefore, there is no plausible claim of relief

for the plaintiffs against Gilchrist under § 502(a)(1)(B).

**B.**     **The Plaintiffs Do Not Have a Viable Claim Under § 502(a)(2) Because §
         502(a)(2) Does Not Provide for Individualized Remedies**

Plaintiff-beneficiaries may also pursue relief under § 502(a)(2) of ERISA, which entitles

them to recover "appropriate relief under Section [409]" for

> any losses to the plan resulting from each such breach, and [they] may restore
> to such plan any profits of such fiduciary who have been made through use
> of assets of the plan by the fiduciary, and shall be subject to such other
> equitable or remedial relief as the court may deem appropriate, including

---

[37]*See id.*

[38]Amended Compl. at ¶ 13.

14

removal of the fiduciary.

29 U.S.C. §§ 1132(a)(2), 1109(a). As indicated above, § 502(a)(2) is broader than § 502(a)(1)(B) in that the plaintiffs can obtain recovery not just from the plan itself, but any plan fiduciary.

Another important difference between § 502(a)(1)(B) and § 502(a)(2) is that § 502(a)(2) is not meant to vindicate individual benefit rights, but rather to obtain restitution to the plan as a whole for imprudent investment losses. *Russell*, 473 U.S. at 139-40. In *Russell*, the Supreme Court interpreted § 409's "other equitable or remedial relief" phrase to exclude individual claims for extra-contractual damages, reasoning that there was no express authority in § 502(a)(2) allowing for individual damages remedies. *Id.* at 142. The *Russell* Court noted that, when reading § 502(a)(2) and its companion provision § 409 as a whole, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the *entire* plan, rather than with the rights of an individual beneficiary." *Id.* (emphasis added). In 1999, the Supreme Court clarified the scope of § 502(a)(2), noting that, based on the structure of § 502, § 502(a)(2) focused on a specific area: "fiduciary obligations related to the plan's financial integrity." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

In 2008, the Supreme Court, in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), clarified the ruling in *Russell*. It noted that for plans that paid defined benefits, *Russell's* "entire plan" language was still good law, because "misconduct by the administrators of

15

a defined [benefit] plan[39] will not affect an individual's entitlement to a defined benefit unless it

creates or enhances the risk of default by the entire plan." *LaRue*, 552 U.S. at 255.  The Court

held, however, that Section 502(a)(2) would provide recovery for fiduciary breaches that

impaired the value of plan assets in a participant's individual account if claim dealt with a

defined contribution plan.[40]  *Id.*  This was so because

> For defined contribution plans . . . fiduciary misconduct need not threaten the
> solvency of the entire plan to reduce benefits below the amount that participants
> would otherwise receive. Whether a fiduciary breach diminishes plan assets
> payable to all participants and beneficiaries, or only to persons tied to particular
> individual accounts, it creates the kind of harms that concerned the draftsmen of §
> 409. Consequently, our references to the "entire plan" in Russell, which accurately
> reflect the operation of § 409 in the defined benefit context, are beside the point in
> the defined contribution context.

*Id.* at 255-56.

The plaintiffs list Gilchrist as a fiduciary to the plan in their amended complaint.[41]

---

[39]The definition of a defined benefit plan under ERISA is as follows:

pension plan other than an individual account plan; except that a pension plan which is not an
individual account plan and which provides a benefit derived from employer contributions
which is based partly on the balance of the separate account of a participant--
(A) for the purposes of section 1052 of this title, shall be treated as an individual account plan,
and
(B) for the purposes of paragraph (23) of this section and section 1054 of this title, shall be
treated as an individual account plan to the extent benefits are based upon the separate account
of a participant and as a defined benefit plan with respect to the remaining portion of benefits
under the plan.

29 U.S.C. § 1002(35).

[40]ERISA defines a defined contribution plan as:

pension plan which provides for an individual account for each participant and for benefits
based solely upon the amount contributed to the participant's account, and any income,
expenses, gains and losses, and any forfeitures of accounts of other participants which may be
allocated to such participant's account.

29 U.S.C. § 1002(34).

[41]Amended Compl. at ¶ 6.

16

Gilchrist, in its Reply, alleges that it is not a fiduciary, but even if it were, the plaintiffs would have no valid avenue of relief against them under § 502(a)(2) and § 409.[42]  As noted above, a plaintiff will have a valid cause of action against a fiduciary under § 502(a)(2) if that fiduciary breaches a duty as it relates to the administration of the entire plan. *Russell*, 473 U.S. at 142.  As per *LaRue*, *Russell* is still good law as long as the ERISA plan is a defined benefits plan. *LaRue*, 552 U.S. at 255. The plaintiffs, in their complaint, do not cast their claims as a misuse of plan assets across the entire plan, but rather request individual relief for fixed benefits (i.e., under a defined benefit plan) due to them specifically under their plan obtained from the Gilchrist website.[43]   Thus, as the plaintiffs do not allege an overarching problem with administration of the plan that affects the plan as a whole, the plaintiffs have not alleged a set of facts which could allow the plaintiffs to obtain relief for breaches of fiduciary duties under § 502(a)(2) against Gilchrist.

**C.      The Plaintiffs are Granted Leave to Amend their Petition to Assert a Claim for Equitable Relief under § 502(a)(3)**

The final ERISA remedy available to the plaintiff-beneficiaries is under § 502(a)(3), which provides for equitable relief.  29 U.S.C. § 1129(a)(3).   The Supreme Court has held that § 502(a)(3) allows lawsuits for individualized equitable relief for breach of fiduciary obligations, and that indeed § 502(a)(3) acts as a "catchall" provision, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy. *Varity*, 516 U.S. at 512.  It is also the broadest of the three avenues of relief,

---

[42][Doc. 10], pg. 6.

[43]Amended Compl. at ¶ 18.

17

allowing for actions against fiduciaries as well as non-fiduciaries. *Callery v. United States Life Ins. Co.*, 392 F.3d 401, 409 (10th Cir. 2004).

The plaintiffs cite the Supreme Court case *Varity Corporation v. Howe* to assert the premise that fiduciaries acting as administrators (in this case, Gilchrist) could be liable under the "catchall" provision for appropriate equitable relief found in § 502(a)(3).[44]  Indeed, it seems that the plaintiffs are most likely relying on this third, catchall provision in order to receive relief. They allege in their Response that "equitable relief" under § 502(a)(3) necessarily must include disbursement of the entire remaining $430,000 allegedly due from the plan, since this is what Mr. Simon expected he would receive when he purchased his benefit plan on Gilchrist's website.[45] For the plaintiffs, "to do what is equitable is to do what is fair," and it is only fair that the beneficiaries receive the amount of benefits that Mr. Simon thought he had purchased.[46] Additionally, the Fifth Circuit has recognized, under § 502(a)(3), a claim for "ERISA estoppel," which essentially tracks with the plaintiffs' detrimental reliance and contract ratification claims as they appear on their complaint. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444(2005) (holding that the Fifth Circuit would "explicitly adopt. . . ERISA-estoppel as a cognizable theory."). Under ERISA-estoppel, the plaintiff must prove: (1) a material misrepresentation (2) reasonable and *detrimental reliance* upon the representation (3) extraordinary circumstances. *Id.* at 444-45 (citations omitted) (emphasis added).

The plaintiffs are at least partially correct in claiming that § 502(a)(3) is a viable avenue

---

[44][Doc. 16], pg. 7.

[45]*Id.*, pg. 7-8.

[46]*Id.*, pg. 7.

of relief against parties like Gilchrist, as other plaintiffs have successfully used it in the past to recover for misrepresentations on an ERISA plan made by a defendant-employer.  For example, in *Varity*, the Supreme Court found that an employer, acting as fiduciary, violated fiduciary duties to employees when it made misleading statements about the security of employees' benefit plans in the aftermath of a structural change in the business. *Varity*, 516 U.S. at 506.  When the employer's misleading statements ended up being wrong and employees lost benefits, the employees sued for an injunction to reinstate portions of the terminated employee welfare benefit plan. *Id.* at 492. The *Varity* court, partially borrowing from trust law, held that an employer is a "fiduciary with respect to the plan" to the extent that he or she "exercises any discretionary authority or discretionary control respecting management" or "has any discretionary authority or discretionary responsibility in the administration" of the plan." *Id.* at 498.  The Supreme Court found for the employees, holding that the employer was acting in its fiduciary capacity when it intentionally lied to its employees about what would happen to their benefits, and that under § 502(a)(3), the employees were entitled to individualized equitable relief. *Id.* at 510.

The undersigned notes, however, that the plaintiffs in *Varity* asked for *equitable* relief (reinstatement of their welfare benefit plans) and not *monetary damages* instead. *Id.* at 489.  The Fifth Circuit has held that if a plaintiff instead claims money they would have received under the policy "but for" the misrepresentations of an employer, this is considered a claim for monetary damages and falls outside of the ambit of § 502(a)(3). *Amschwand v. Spherion Corp.*, 505 F.3d 342 (5th Cir. 2007).  In the *Amschwand* case, which is very factually and procedurally similar to the instant case, the plaintiff-beneficiary filed for life insurance benefits under her late husband's Aetna life insurance policy, provided to him by his employer, Spherion. *Id.* at 344.  The late

19

husband had enrolled in the life insurance plan while he was on disability leave in 2000, and paid premiums on the plan until his death in 2001. *Id.* Unfortunately for the late husband, he was not told by Spherion that, pursuant to the Aetna policy's "Active Work Rule" requirement, his coverage under the policy would not start unless and until he left disability leave and started working at Spherion again. *Id.*  In fact, the late husband was told repeatedly by Spherion, after he made inquiries, that he was covered and that his wife would receive benefits upon his death. *Id.* He relied solely on the verbal assurances from Spherion that he would retain coverage, as Spherion either maintained that informational booklets on the policy were not yet available for employees, or else failed to provide paperwork on the policy. *Id.*

When the late husband died without ever returning to work, Aetna denied the beneficiary of the policy (his widow) benefits because the late husband had not satisfied "Active Work Rule." *Id.* His widow subsequently sued Spherion under ERISA § 502(a)(3). *Id.* She alleged that Spherion breached its fiduciary duties by providing false information about the terms and status of his life insurance under the plan, and because Spherion never told them that the late husband had to go back to work to be covered. *Id.* In addition to equitable relief and statutory damages, the widow sought $426,000 (the value of the life insurance benefits) from Spherion, which represented the amount of money the widow would have received if her late husband had actually been covered. *Id.*

Spherion moved for partial summary judgment, arguing that § 502(a)(3)'s equitable relief did not include recovery of any monetary losses caused by the fiduciary's breach of its duties. *Id.* The District Court agreed, and the Fifth Circuit upheld the grant of summary judgment on appeal. Several cases were instructive in the *Amschwand* court's conclusions.  First, the Fifth Circuit

noted that in *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), the Supreme Court had found that a plaintiff seeking to recover losses under § 502(a)(3) from a non-fiduciary's participation in an alleged fiduciary breach was not seeking traditional equitable remedies, such as an injunction, but rather sought money damages, which were the "'classic form of legal relief' and thus not a 'typically equitable remedy available under § 502(a)(3)'." *Id.* at 345 (citing *Mertens*, 508 U.S. at 255).

The *Amschwand* court also cited *Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204 (2002). In *Knudson*, a plan administrator sued under § 502(a)(3) to enforce a reimbursement provision in the plan against a plan beneficiary who received compensatory damages in a lawsuit. *Id.* at 211. The Supreme Court rejected the administrator's claims to compel payment of money due on the contract, as "specific performance of a past due money obligation" that "was not typically available in equity." *Id.* In interpreting the *Knudson* case, the *Amschwand* court noted that not only must the nature of the relief sought be equitable, but also "the cause of action giving rise to the claim be generically equitable as well." *Amschwand*, 505 F.3d at 346. In *Knudson*, the *Amschwand* court noted what was important was that the plaintiff's desired relief was not equitable, as an "equitable lien could not be established over funds or property *not within a defendant's control.*" *Id.* (emphasis added).

Next, the *Amschwand* court cited *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006) to reinforce the premise that the Supreme Court uses a "two-part equity test" to determine if a plaintiff is truly seeking equitable relief under § 502(a)(3). *Id.* In *Sereboff*, an injured fiduciary who had recovered a tort settlement was subsequently sued by the plan fiduciary to recoup medical expenses. *Id.* The *Amschwand* court noted that, unlike in *Knudson*, the

Supreme Court found that the *Sereboff* plaintiff was seeking equitable relief under § 502(a)(3), as the plaintiff was seeking funds that were in the possession and control of the defendant. *Id.* Thus, what is important in an equitable action against a defendant under § 502(a)(3) is "the defendant's possession of the disputed res." *Id.* (citations omitted).

The *Amschwand* Court also noted that it did not matter whether the sued defendant was a non-fiduciary or not, citing persuasive case law from the Fourth Circuit, *Callery v. United States Life Ins. Co.*, 392 F.3d 401 (10th Cir. 2004). *Id.* In the *Callery* case, a wife purchased life insurance for her husband from her employer. *Callery*, 392 F.3d at 403. Later, the wife divorced the husband, but continued to pay insurance premiums on his policy until his death, not realizing that the insurance company would not pay out life insurance benefits on him because her husband's eligibility for life insurance terminated upon their divorce. *Id.* The wife sued the employer, alleging that it had breached its fiduciary duty to her by failing to provide her with a copy of the policy, which would have alerted her to the fact that her husband's coverage would terminate upon divorce. *Id.* The wife sought an injunction to get the employer to pay out life insurance benefits under § 502(a)(3). *Id.* at 405. The Tenth Circuit rejected her claims, finding that "to the extent that [the plaintiff] seeks payment of policy proceeds, such relief is barred under 502(a)(3)." *Id.* The Court classified the wife's claims as "reliance damages" (much as the plaintiffs in this instant case do in their complaint which makes a claim under detrimental reliance), and noted that "such relief is compensatory and not typically available in equity." *Id.* at 405-06.

The undersigned finds the reasoning in the *Amschwand* case persuasive, and thus adopts it. In *Amschwand,* the court ultimately noted that the plaintiff's claim for relief was equitable

22

because the employer, Spherion, never maintained possession of the late husband's insurance proceeds. *Amschwand,* 505 F.3d at 347. The court held that the plaintiff, by seeking the amount of insurance money she would have received but for the fiduciary breaches by Spherion were "make whole" damages that were legal in nature, as they ". . . represent[ed] the damages on the insurance contract Spherion allegedly breached." *Id.* Continuing, the *Amschwand* court held that "if Spherion breached its fiduciary duty to [the late husband, the appropriate equitable remedy [would instead be] the disgorgement of Spherion's ill-gotten profits, *i.e.*, refund of the policy premiums." *Id.* at 348.

In the instant action, the plaintiffs do not cast their requests as requests for equitable relief, such as a declaratory action or injunction requiring Gilchrist to adhere to the plan as it was presented to Mr. Simon on the benefits website. Instead, they request damages of $430,000 total, the amount they allege will "equitably" make them whole in light of Gilchrist's breaches of fiduciary duties.[47] This Court agrees, however, with the *Amschwand* Court and Supreme Court that a bare claim for monetary compensation which would have allegedly been due under the plan but for an employer/fiduciary's acts is not proper equitable relief under § 502(a)(3). While it is unfortunate that, based on what may have been a typographical error on Gilchrist's website, Mr. Simon erroneously believed that he was due much more in benefits than he actually received, the plaintiff-beneficiaries cannot use the equitable relief of § 502(a)(3) as a "backdoor" way to recover from Gilchrist what they cannot recover from Gilchrist directly. The only equitable relief which the plaintiffs could conceivably receive under § 502(a)(3) would be refund of the difference between the premiums Mr. Simon paid on his policy minus the premiums Mr. Simon

---

[47]Amended Comp. at ¶ 18; [Doc. 16], pg. 7.

23

should have paid under a $150,000/$150,000 policy.  Therefore, in the interest of justice, the undersigned will give the plaintiffs thirty (30) days from the issuance of this Order to amend their complaint to include a claim for equitable relief under § 502(a)(3).

## CONCLUSION

For the reasons stated herein, it is ordered that Gilchrist's Motion for Judgment on the Pleadings [Rec. Doc. 10] IS GRANTED in part and DENIED in part. It is further ordered that the plaintiffs are given thirty (30) days from this issuance of this Order to amend their complaint to include a request for equitable relief as allowed under ERISA § 502(a)(3).

Lake Charles, Louisiana, this __11__ day of __October__, 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT
JUDGE