RECEIVED
IN LAKE CHARLES, LA.
APR 10 2015
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CARMEN MALBROUGH & LIONEL SIMON,** | * | **CIVIL ACTION NO. 2:11-CV-1842** |
| **Plaintiffs,** | * | |
| v. | * | **JUDGE MINALDI** |
| **KANAWHA INSURANCE COMPANY & GILCHRIST CONSTRUCTION COMPANY, L.L.C.,** | * | |
| **Defendants.** | * | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is Kanawha Insurance Company's ("Kanawha") Motion for Partial Summary Judgment [Doc. 111], to which the plaintiffs have filed a Response [Doc. 113], to which Kanawha has filed a Reply [Doc. 117]. For the following reasons, Kanawha's Motion [Doc. 111] is **GRANTED**.

## FACTS & PROCEDURAL HISTORY

On December 21, 2010, the Ronald Simon ("the decedent") died after being backed over by a bulldozer.[1] The decedent's foot was amputated after the accident, and then he succumbed to his injuries after a two-week stay in the hospital.[2] After the decedent's death, the plaintiffs filed their claims as beneficiaries under both the Life and Accidental Death and Dismemberment policies.[3] The Accidental Death and Dismemberment Policy ("the Policy") provided $50,000 in basic accidental death and dismemberment benefits and up to $300,000 in supplemental

---

[1] Pls.' Fifth Supp. and Am. Pet for Damages [Doc. 107] ¶ 14.
[2] *Id.*
[3] *Id.* ¶ 19.

1

accidental death and dismemberment benefits.[4] Kanawha paid $300,000 to the beneficiaries but then refused to make any other payments; a denial of benefits was issued on May 27, 2011.[5]

On September 15, 2011, the plaintiffs filed suit against Gilchrist Construction Company and Kanawha in the Thirty-First District Court for the Parish of Jefferson Davis.[6] The case was thereafter removed to this court under 28 U.S.C. § 1331, federal question jurisdiction.[7]

## LAW & ANALYSIS

### I. Summary Judgment Standard

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove

---

[4] Ex. 1 The Policy [Doc. 111-3], at 8.
[5] Pls.' Opp'n to Mot. to Dismiss Filed by Willis of Louisiana, Inc. [Doc. 91], at 3-4.
[6] Not. of Removal [Doc. 1].
[7] *Id.*

the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.,* No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little,* 37 F.3d at 1075.

## II. Interpretation of the Policy

Kanawha asserts that it is entitled to judgment as a matter of law on the plaintiffs' claim for dismemberment benefits and that the plaintiffs are not entitled to both dismemberment and death benefits under the Policy.[8] The plaintiffs claim that under the Policy, they are owed benefits for the amputation of the decedent's foot and for the death of the decedent.[9]

The plaintiffs' cause of action is governed by ERISA. *See* 29 U.S.C. § 1132(a)(1)(b) (authorizing a cause of action to enforce rights under the terms of an insurance plan). Contract language in an ERISA plan is to be interpreted in an "ordinary and popular sense as would a person of average intelligence and experience, such that language is given its generally accepted meaning if there is one." *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 818 (5th Cir. 1997) (citations omitted). "All provisions of an insurance contract should be read together and construed according to the plain meaning of the words involved, in order to avoid ambiguity while at the same time seeking to give effect and meaning to all portions of the policy." *Jameson v. Mut. Life Ins. Co. of New York,* 415 F.2d 1017, 1020 (5th Cir. 1969).

The dispute centers on interpretation of the relevant contract language. The policy states "When an Accident results in more than one of the Injuries listed in the Table of Accidental

---

[8] Kanawha's Mem. in Supp. of Mot. for Partial Summ. J. [Doc. 111-2], at 5.
[9] Pls.' Opp. to Mot. for Partial Summ. J. [Doc. 113], at 7-8.

Death and Dismemberment Benefits [a]nd the Injuries provide equal Benefits, We will pay one such Benefit, or We will pay the Benefit available for the larger or largest such loss."[10] "Injury means bodily harm resulting directly from an Accident and independently of all other causes."[11]

To determine the benefit payable for the loss incurred, the maximum benefit is multiplied by the percentage in the Table of the Accidental Death and Dismemberment.[12] The Table of Accidental Death and Dismemberment provides that "Loss of Life" is payable at 100%, and "Loss of One Hand or One Foot or Sight of One Eye" is payable at 50%.[13]

Because the death benefit is larger than the benefit for loss of one foot, Kanawha argues that it satisfied its obligation when it paid 100% of the decedent's available death benefits and owes no additional money for the dismemberment of the decedent. The plaintiffs first assert that the ordinary meaning of "injury" does not mean "death," and therefore the provision referring to "Injuries listed in the Table of Accidental Death and Dismemberment Benefits" does not encompass death benefits. This argument is irrelevant because the Policy has provided a definition of "Injury."

The plaintiffs then claim that the definition of "Injury" in the Policy does not include death. "Injury" is defined as "bodily harm resulting directly from an Accident and independently of all other causes." The plaintiffs state that "[a]lthough a death may certainly include 'bodily harm,' 'bodily harm' and 'injury' do not necessarily include death." While this statement is true, it is not persuasive. "Bodily harm" and "injury" do not necessarily include death, but they could. There is no limiting language that this definition does not include loss of life.

---

[10] Ex. 1 The Policy [Doc. 111-3], at 20.
[11] *Id.* at 30.
[12] *Id.* at 17.
[13] *Id.*

4

Finally, the plaintiffs oppose Kanwha's partial motion for summary judgment on the basis that Kanawha's interpretation of the policy would make the policy internally inconsistent. As Kanawha notes in its reply, the Policy defines "Accident" as "a sudden, unexpected, violent or external event that causes bodily Injury to a Covered Person."[14] If death were not included within the definition of Injury, then an Accident could never result in a payout of accidental death benefits. Furthermore, the Table of Accidental Death and Dismemberment provides that loss of life is payable at 100% of the maximum benefit. Any additional payments, such as 50% of the maximum benefit for loss of foot, would result in a payout of 150% of the maximum benefit available. It is illogical that the Policy has built-in provisions designed to pay beneficiaries more than the maximum benefit allowed.

The terms of the Policy are unambiguous. The fact that different beneficiaries are named depending on the type of benefit to be paid does not create ambiguity. If an insured experiences more than one covered Injury, there is no multiplier effect on the Benefit available. There is no genuine dispute as to a material fact concerning this issue.

Lake Charles, Louisiana, this 9 day of April, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[14] Ex. 1 The Policy [Doc. 111-3], at 28.